ATIMUA TALAGU, also known as
SAU TALAGU MOLIGA,
Petitioner
v.
LUELI TE'O, MA'A TE'O,
and for their parents,
PEPA SI'UFANUA TE'O, UIVA TE'O,
and for AVEIA TAUTOLO,
Respondents

No. 1321-1972

High Court of American Samoa

Civil Jurisdiction, Land and Titles Division

[Land: "Toa" in Faleniu]

January 4, 1974

Meauta O. Atufili Mageo, Practitioner, appearing for petitioner.

Mulitauaopele L. S. Ivi, Attorney, appearing for respondents.

Following a review of the pleadings and arguments, the Court makes the following determinations:

## I

The petitioner Atimua Talagu brought this action for a Permanent Injunction in order to restrain respondents Lueli Te'o, Ma'a Te'o, and Aveia Tautolo from entering a parcel of land known at various times as Aumalagamai, Matavai, and Toa located in Faleniu village. The respondents' parents Pepa Si'ufanua Te'o and Uiva Te'o intervened as the real parties in interest in this case. The activities which Atimua sought to enjoin was the building of a house and pig stys, planting plantations, and laying water pipes

across the property without his permission. The Te'os denied that they needed Atimua's consent, because they claimed a superior right of possession of the land.

Since both parties claim possession of the land, the court is faced with the question of determining who established the superior claim to this property? In order to make this determination the court must examine the chain of title under which the claimants base their positions.

## II

The facts in this matter are substantially uncontroverted. Both parties claim to have received the property from the Si'ufanua family, after a 1949 High Court decision awarded the land to the Si'ufanuas. In 1951, a "Transfer of a Parcel of Land of Si'ufanua Family known as Aumalagamai" was filed with the Register of Titles assigning the property to Uiva Te'o, and signed by the matai Si'ufanua Tamo and 21 other members of the family. In 1952, the Te'o family moved to the United States and left Si'ufanua Tamo and Vaesavali to look after the land and assigned the plantation thereon to Si'ufanua Tamo for his use. This Si'ufanua Tamo is the father of Mrs. Pepa Si'ufanua Te'o, and at the time of the hearing in 1973 was 98 years old. Petitioner Atimua moved onto the land under direction of Si'ufanua Tamo in 1961, at which time, Uiva Te'o learned of the occupancy. In 1964, Si'ufanua Tamo, signed and gave to Sau Talagu Moliga, also known as a document entitled "Bill of Sale," which conveyed the property Toa. Uiva Te'o made several visits to Pago Pago during these years. Starting in 1969 the Te'o children built and moved into a house on the land. In 1971, Si'ufanua Aitu signed a "Warranty Deed" for Atimua, giving him the same property as before; this deed was approved by the Land Commission and the Governor of American Samoa, John Haydon, on November 2, 1972. A month later, Atimua

filed this case. Uiva Te'o left the United States and moved back to Samoa in 1973, after a twenty-one year absence.

## III

■ Counsel for the Te'os states that the assignment of 1951 by the Si'ufanua Tamo and Si'ufanua family is valid and cannot be revoked by Si'ufanua Aitu, the successor to the matai title, citing *Tauoa Tikeri v. Mafo'e and Meaalofa*, L & T #1107. That a successor matai could not revoke the assignment as long as the grantee continues to serve the matai is sound Law and Samoan Custom. But that rule would not prevent a surrender of the estate.

■ The character of conveyance known as "surrender" is one method of Inter Vivos Transfers. It includes both the yielding up of an inferior estate to the immediate estate in reversion or remainder, wherein the inferior state may drown by mutual agreement between the parties, and the actual relinquishment of the physical possession of the premises, such as in a leasehold estate. After an estate has been conveyed, the grantor and grantee can agree to the "rescission" of the assignment, divesting the leasehold estate out of the assignee, and a revesting thereof in the landlord. In order to constitute in legal effect a surrender, the rescission must satisfy the requirements existing with reference to such a mode of conveyance. In order to be successful, the estate surrendered must be no greater in amount than the estate of the landlord, since otherwise it cannot merge therein. It must also immediately precede the latter estate as regards the right of possession, with no vested estate intervening. See Tiffany, Real Property, 3rd Edition, 1939, Vol. 4, Section 960.

■ Although the treatise spoke of a surrender as referring to tenancy for life or years, the court feels that this concept of conveyance can appropriately be applied to the communal land in American Samoa, and the relation-

124

ships created between the matai and the assignees of property. As the respondent pointed out, the matai does not own family lands but is trustee for the benefit of the family so that land and fruits therefrom continue in family and their descendants. Digest of High Court Opinions, page 70. As trustee, the matai is the ultimate reversioner for all estate carved out of the communal land of his family. And since any estate with a reversion is subject to surrender, the treatment fits perfectly well within the communal land concept.

A surrender by "act and operation of law," occurs when certain acts by the parties are inconsistent with the continued distinct existence of the two former estates. One which frequently occurs, results from the relinquishment of possession by the tenant and the resumption of possession by the landlord. Because this act is inconsistent with the continuance of an outstanding assignment in the tenant, both are estopped to assert that the relation of landlord and tenant still exists. It is immaterial whether such change of possession is the result of agreement, or whether it occurs as a result of the abandonment of the premises by the tenant and resumption of possession by the landlord. The issue of wheteer [sic] the landlord has taken possession with the intention of occupying and controlling the premises as his own, to the exclusion of the tenant in case the latter desires to return, is ordinarily a question of fact. See Tiffany, Real Property, 3rd Edition, 1939, Vol. 4, Section 962.

IV

■ Were their [sic] any acts which indicated that a surrender occurred? When a member of the family is assigned communal land, he accepts the obligation of serving the matai and the family as required under Samoan custom. Thus, having married into the Si'ufanua family, when Uiva Te'o moved onto the land in 1949 he accepted

125

this responsibility. However, when he moved in 1952, only one year after receiving the assignment, he turned the land back to Si'ufanua Tamo for his care and use. This was an actual relinquishment of possession by the assignee to the reversioner, Si'ufanua Tamo who was also the matai and trustee for all of the Si'ufanua family lands. Perhaps the intention was not to abandon the property, but as the years went by from 1952 to 1961, Uiva Te'o did nothing on the land, and gradually Si'ufanua Tamo began to treat the land as if he were again the sole owner as the matai of the Si'ufanua family.

█ If there was any doubt as to whether the assignment of 1951 was still in effect ten years later, Si'ufanua Tamo dispelled that question when he directed Atimua to move onto the land. Atimua was rendering service to Si'ufanua in return for living on Si'ufanua family land. That act was completely inconsistent with the continuance of an outstanding assignment for Uiva Te'o. Si'ufanua Tamo acted toward the land as if he assumed that it belonged to him as the matai of the family. By living on the land from a day to day basis, Atimua created continual acts which were inconsistent with the continuance of an outstanding assignment, which acts lasted for years. He treated the land as his own, built a house, had two surveys taken, and delivered fine mats in service to the matai.

In 1964, Atimua received a Bill of Sale,[1] which once again reaffirmed the assumptions of the Si'ufanua family

---

[1] The Bill of Sale reads as follows:

KNOW ALL MEN BY THESE PRESENTS: That I, SI'UFANUA TAMO, a leading chief of Si'ufanua family and who is now taking care of all the communal properties of the said family, in the village of Faleniu, County of Tuālauta, Western District, Island of Tutuila, Territory of American Samoa, of the first part, for and in consideration of One Dollar, to Si'ufanua and Si'ufanua family in hand paid at or before the ensealing or delivery of these presents by Sau Talagū Moliga, of the second part, the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents does grant and convey unto the said parties of the second part, their executors, administration, successors of assigns, the following property, to wit:

All that certain real property situate in the Village of Faleniu, County of Tualauta, Western District, Island of Tutuila, American Samoa, being a

toward possession of the land. Although entitled Bill of Sale, this document makes several statements which make a strong case for assuming that a Surrender by operation of law had occurred. The document on its face purposts [sic] to transfer all interests of the Si'ufanua family to Sau Talagu Moliga of the land which was surveyed for that specific purpose. The deed even states that the grantor would warrant and defend the sale of the said property to the grantee against all and every person or persons whomsoever. This statement could not be made unless they assumed that the assignment of 13 years before was null and void.

At the hearing, Uiva Te'o stated that in 1964 Si'ufanua Tamo was no longer the holder of the matai title because he had resigned from the position. The Te'os attacked the Bill of Sale on the ground that Si'ufanua Tamo was not the matai or trustee of the land, and consequently could not legally sell it. However, on the face of the document, Si'ufanua Tamo represented that he was the leading chief of the Si'ufanua family and that he was taking care of all the communal properties of the family in the village of

portion of the land known as "TOA", more particularly described as follows:

Beginning at a concrete monument located 3 feet from the center of the stream which has Coordinates North 290,970.03; and East 236,606.71; thence leaving said point of beginning on azimuth 317°56′13″, a distance of 68.88 feet to a mark (X) on the rock; thence on azimuth 300°10′43″, a distance of 73.45 feet to a mark (X) on the rock; thence on azimuth 348°03′43″, a distance of 202.94 feet to a point mark (X) on the rock; thence on azimuth 337°04′43″, a distance of 72.72 feet to an iron pin; thence on azimuth 350°04′43″, a distance of 225.51 feet to a point mark (X) on the rock; thence on azimuth 87°46′13″, a distance of 258.56 feet to a concrete monument; thence on azimuth 183°51′59″, a distance of 587.12 feet to the point of beginning.
Containing 2.25 acres more or less.
The description correctly represents a survey made by me or under my direction in conformance with the Code and Administrative Manual of the Government of American Samoa at the request of Talagu Moliga in the month of June, 1963.
The land is located at the Village of Faleniu, Tualauta County, Western District, Island of Tutuila, Territory of American Samoa.
TO HAVE AND TO HOLD THE same, unto the said party of the second part, his executors, administrators, successors or assigns, forever. And the

Faleniu. Even if he had resigned from the title, Si'ufanua Tamo still attempted to exercise the "pule" over the land, by directing Atimua to move on the land, and by signing the deed.

All of the acts are inconsistent with the continuance of the original assignment between the matai and a family member. The court must wonder if Uiva Te'o acted like a normal property owner when he learned that someone else moved onto his land and received a deed and Bill of Sale in 1964. A deed purportedly granting the same property which he claimed. The deed was also signed by the same grantor from which he claimed his assignment in 1951. Te'o testified that on his visits to Samoa he learned that Atimua had moved onto the land, and apparently being concerned he asked why Atimua had the land. The response that he was given was that the new title holder Si'ufanua Aitu would explain the situation to him. Evidently this never happened, but Te'o made no effort to reassert his rights to the property.

---

said party of the first part, for himself, his family, his heirs, executors, administrators, successors or assigns, covenants and agrees to and with the said parties of the second part, his executors, administrators, successors or assigns, to WARRANT and DEFEND the sale of said property, goods and chattels, hereby made unto the said party of the second part, his executors, administrators, successors or assigns, against all and every person or persons whomsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hands and seal, this 23 day of October, A.D. 1964.

/s/ SI'UFANUA TAMO

Territory of American Samoa } ss
County of Mauputasi

The foregoing instrument was acknowledged before me this 23 day of October, 1964, by Talagu and Chief Si'ufanua Tamo, act as a representative of Si'ufanua family.

WITNESS my hand and official seal.

/s/ FAINUULELEI S. UTU
Notary Public

Seal:
Fainuulelei S. Utu
Notary Public
American Samoa

It was not until five years later in 1969 that the Te'o children began to move onto the land, over the objection of Atimua. By this time, Sau Talagu Moliga had been given the Si'ufanua family matai name of Atimua, even though he was not a blood relation, because of his continual service of the matai, Si'ufanua. Atimua had lived on the land for 8 years, and it had been 17 years since Uiva Te'o had left for the states, relinquishing the property, and since Si'ufanua Tamo had resumed possession. By now both parties were estopped from asserting that there was not a surrender, even in the event that the tenant showed a desire to return.

Atimua considered the property to be exclusively his, and when the Te'o children arrived, he began to take steps to establish his rights. Because there was some question about the validity of the 1964 Bill of Sale, apparently because Si'ufanua Tamo was not the matai, and because the Bill of Sale had not been approved by the Land Commission and the Governor, another deed was drawn up in 1971. This deed met all statutory requirements including a family counsel [sic], and was signed by Si'ufanua Aitu, the current matai of the family. Again it is in the form of a warranty deed and even added the phrase: "Grantors hereby covenants to and with said Grantee and Grantee's heirs, successors, and assigns that Grantor is lawfully seized the premises under the laws of American Samoa and can legally convey unto Grantee free from all encumbrances and that Grantor will warrant and forever defend the above granted premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever." Thus, once again if there was any question at all as to whether the Si'ufanua considered the land to be his to give away, the facts show that the statements would be completely inconsistent with a contrary assignment. In addition, this deed was signed by Si'ufanua Aitu, the

successor to the Si'ufanua title, thus indicating that it was the wish of both Si'ufanua Aitu and Tamo that Atimua have the land. Uiva Te'o stated that he had asked Si'ufanua Aitu why Atimua had the land and that Te'o was told that Si'ufanua Aitu would take care of it. That is exactly what Si'ufanua Aitu did, and he completely and thoroughly transferred the land to Atimua.

The respondents emphasize that an assignment cannot be revoked by a subsequent matai, nor would a matai take away family land from a family member and assign that some [sic] parcel of land to a non-family member. The successor matai, Si'ufanua Aitu did not revoke the 1951 assignment, because it had been surrendered either by agreement or by abandonment. The two warranty deeds in 1964 and 1971 exercised the right to grant the land out again. The court interprets all of these facts as acts inconsistent with the continuance of an outstanding assignment in the previous tenant, Te'o.

## V

The final questions [sic] to consider before a surrender is complete is whether the estate surrendered was no greater in amount than the estate of the landlord in order for the two to be able to merge. The assignment of 1951 was a lesser estate [than] that held by the overall trustee, Si'ufanua Tamo. Thus Te'o grant could merge with the estate controlled by the matai.

In addition for the merger to be complete, the estate of the tenant Te'o did in fact immediately precede the right of possession held by Si'ufanua Tamo, the matai of the family. There were no other vested estates intervening, and when the property was relinquished, Te'o turned it directly over to Si'ufanua Tamo for his use and possession.

Other items were brought out in the testimony such as an allegation that Si'ufanua Tamo had been tricked by the

Atimua grant and that he actually wanted Pepa Te'o to have the land. In fact Si'ufanua Tamo testified at the trial, and although hard of hearing, it is difficult to believe that Atimua could have lived on the land for 10 years, and have received two separate deeds against the wishes of the Si'ufanua matais. It is clear from the testimony that the parties understood English sufficiently well to understand what was in the deeds and at least to be put on notice that there were conflicting claims to the property.

The Te'o ask [sic] the court to set aside two warranty deeds on the grounds that the transfer was contrary to established and respected Samoan custom. This is exactly what the second deed was to prevent. The Land Commission reported to the Governor on October 25, 1972, that "The present Si'ufanua wishes the grantees to have the land. However, if the present Si'ufanua should die, it is entirely possible that the next holder of the title might not want the grantee to have the land and put him, his wife and children off the land. That is the second reason for the deed." Atimua recognized that unless he diligently secured the title to his land, he could lose it. His efforts have been rewarded and he is definitely the possessor of the land without any reversion in the Si'ufanua family.

The court is concerned about the carelessness with which land is given out, taken back, given away again, names are changed and no records of the transactions are kept. It does not approve of the granting of land by reference to name only, as in the 1951 assignment, because of the confusion and uncertainty that arises. The court will strive to find consistency and stability in land transactions, in conformance with the law. However, it cannot assist those parties who sit on their rights and fail to properly assert their claims.

In summary the court finds that because a surrender in fact occurred, the grant by Si'ufanua to Atimua was valid,

and that Atimua has established a superior claim to the land than that of the respondents.

## VI

IT IS THEREFORE THE ORDER OF THE COURT, THAT:

1. The respondents are hereby restrained from entering the land described herein, without the permission of the petitioner.

2. That respondents remove the house, pig stys, water pipe, and plantations that they placed on the land.